Presented to the foregoing by the foreman of the Grand Jury in open Court, in the presence of the Grand Jury and FILED in the U.S. DISTRICT COURT at Seattle, Washington.

_____ March 5 _____ 20 25

Ravi Subramanian, Clerk

_____ Deputy

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JIAN ZHAO,<br><br>Defendant. | NO.  **CR 25 – 5 0 4 0 BHS**<br><br>**INDICTMENT** |

The Grand Jury charges that:

### INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1.    Defendant Jian ZHAO, an active-duty Sergeant in the United States Army, was stationed at Joint Base Lewis-McChord, in the Western District of Washington, assigned to the 17th Field Artillery Brigade. Defendant ZHAO was a public official who swore an oath to faithfully discharge his duties as a soldier in the United States Army.

2.    In Defendant ZHAO's most recent Non-Commissioned Officer Evaluation Report ("NCOER"), his job title in the Army was listed as the Battery Supply Sergeant for the Headquarters and Headquarters Battery 17th Field Artillery Brigade. The NCOER stated that Defendant ZHAO's daily duties and scope were as follows: "Serv[ing] as the Battery Supply Sergeant for Headquarters and Headquarters Battery 17th Field Artillery Brigade; directly responsible for the request, receipt, issue, turn-in, and accountability of all individual, organizational, installation, expendable, and durable supplies and equipment. Manages the records and accountability of over 55 million dollars of Army property; responsible for the health, welfare, readiness, and professional development of three Soldiers." The NCOER listed Defendant ZHAO's areas of special emphasis as

"Property accountability; Monthly supply reports; organizational clothing records; Command Supply Discipline Program [and] Tactical Operation Center Exercise."

### Classified Information

3.     National security information was information owned by, produced by, produced for, and under the control of the United States government. Pursuant to Executive Order 12958 signed on April 17, 1995, as amended by Executive Order 13292 on March 25, 2003, and Executive Order 13526 on December 29, 2009, national security information was classified as "TOP SECRET," "SECRET," or "CONFIDENTIAL," as follows:

  a. Information was classified as TOP SECRET if the unauthorized disclosure of that information reasonably could be expected to cause exceptionally grave damage to the national security that the original classification authority was able to identify or describe.

  b. Information was classified as SECRET if the unauthorized disclosure of that information reasonably could be expected to cause serious damage to the national security that the original classification authority was able to identify or describe.

  c. Information was classified as CONFIDENTIAL if the unauthorized disclosure of that information reasonably could be expected to cause damage to the national security that the original classification authority was able to identify or describe.

4.     Pursuant to Executive Order 13526, information classified at any level could be lawfully accessed only by persons determined by an appropriate United States government official to be eligible for access to classified information, who had signed an approved non-disclosure agreement, who received a security clearance, and who had a "need to know" the classified information. Classified information could only be stored or discussed in an approved facility.

5.     Controlled Unclassified Information ("CUI") was a distinct category of information that, while not classified, was subject to safeguarding procedures and

Indictment - 2
*United States v. Jian Zhao*

dissemination controls. Executive Order 13556 "establishes an open and uniform program for managing information that requires safeguarding or dissemination controls" for CUI. All U.S. Government agencies were required to develop and implement protective measures, conduct regular training, and establish sanctions and reporting requirements for the misuse or disclosure of CUI. 32 CFR § 2002. The Department of Defense implemented Executive Order 13556 via Department of Defense Instruction 5200.48, which mandated the requirements for marking, handling, and disseminating CUI and implemented reporting and training requirements for Department of Defense components.

6.      Defendant ZHAO had a duty to protect national defense information and received training on the proper handling of U.S. government classified information and CUI. Specifically, Defendant ZHAO received security indoctrination concerning the nature and protection of classified information, including the procedures to be followed in ascertaining whether other persons to whom Defendant ZHAO would contemplate disclosing this information had been approved for access to it. Defendant ZHAO was advised that the unauthorized disclosure, unauthorized retention, or negligent handling of classified information by Defendant ZHAO could cause damage or irreparable injury to the United States.

7.      As part his official duties, among other responsibilities, Defendant ZHAO was responsible for protecting United States military classified, sensitive, CUI-marked, and operational security information. In or around December 2021, Defendant ZHAO signed a memorandum agreeing to never divulge classified information to anyone unless (a) it was officially verified that the recipient had been properly authorized by the United States Government to receive such information, or (b) prior written notice of authorization had been given.

8.      Defendant ZHAO maintained a U.S. security clearance and was eligible to access material up to and including the SECRET level.

9.      Co-Conspirator 1, whose true identity is unknown to the Grand Jury, was a foreign national purporting to reside in Changchun, the People's Republic of China

("PRC") and was not entitled to receive national defense information or sensitive U.S. military information.

10.     Defendant ZHAO was not authorized to disclose national defense information or sensitive U.S. military information to Co-Conspirator 1. Nevertheless, Defendant ZHAO entered into a corrupt scheme whereby he collected and transmitted to Co-Conspirator 1, and to other individuals known and unknown to the Grand Jury, national defense information and sensitive U.S. military information in exchange for financial gain. The unauthorized disclosure of this information could place the national security of the United States, and the safety of Defendant ZHAO's fellow soldiers, in jeopardy.

## COUNT 1

### *(Conspiracy to Gather, Transmit or Lose National Defense Information)*

11.     The allegations contained in lines 1 through 10 of this Indictment are re-alleged and fully incorporated here by reference.

12.     Beginning in or about July 2024 and continuing through the present, within the Western District of Washington and elsewhere, Defendant Jian ZHAO, with others known and unknown to the Grand Jury, did knowingly and unlawfully conspire together and with each other to obtain and transmit documents, writings, photographs, instruments, appliances, and notes relating to the national defense of the United States ("national defense information") to individuals not entitled to receive it.

### Manner and Means of the Conspiracy

13.     Defendant ZHAO and Co-Conspirator 1 used the following manner and means, among others, to obtain and transmit national defense information to individuals not entitled to receive it:

    a. Defendant ZHAO and Co-Conspirator 1 used multiple internet-based encrypted methods to communicate.

    b. Defendant ZHAO informed Co-Conspirator 1 of the national defense information, including sensitive U.S. military information, that Defendant ZHAO had in his possession and/or had access to. Defendant ZHAO informed

Co-Conspirator 1 the prices for which Defendant ZHAO would sell such national defense information. Defendant ZHAO tasked Co-Conspirator 1 with finding buyers who were willing to pay Defendant ZHAO's prices for such national defense information.

c. Once Co-Conspirator 1 found a buyer, Defendant ZHAO negotiated methods of delivery and payment for national defense information, including sensitive U.S. military information.

d. Defendant ZHAO sought buyers for national defense information, including sensitive U.S. military information, through other co-conspirators in addition to Co-Conspirator 1 using multiple internet-based, encrypted methods.

e. Once Defendant ZHAO and co-conspirators agreed to the price and means of transmission, Defendant ZHAO gathered the national defense information that he was selling, including by taking photographs of such information using his cellphone in his work premises.

f. Defendant ZHAO delivered, transmitted and attempted to transmit to Co-Conspirator 1 and others known and unknown to the Grand Jury national defense information, including multiple classified hard drives and information pertaining to the HIMARS[1] weapon system and specific planning and technical data relating to the U.S. Army.

g. Defendant ZHAO received payments for the national defense information that he sold to Co-Conspirator 1.

h. By means of the above-described conduct and in exchange for the above-described acts in violation of his official duties, Defendant ZHAO received payments from Co-Conspirator 1 totaling at least $15,000 USD from approximately August 2024 to December 2024.

---

[1] HIMARS stands for High Mobility Artillery Rocket System which is a long-range artillery system that allows for the simultaneous launching of multiple, precision-guided rockets.

## Overt Acts in Furtherance of the Conspiracy

14.    In furtherance of the conspiracy and to achieve the objects thereof, Defendant ZHAO, Co-Conspirator 1, and others known and unknown to the Grand Jury committed and caused to be committed the following overt acts, among others, in the Western District of Washington and elsewhere:

*Encryption-capable computer*

a.  On or about July 13, 2024, Defendant ZHAO offered Co-Conspirator 1 a computer used in "military office equipment system" for $1,800.  The next day, ZHAO informed Co-Conspirator 1 that he did not sell said computer to another buyer who offered to pay more.

b.  On or about July 15, 2024, Defendant ZHAO offered Co-Conspirator 1 a computer system that was "just replaced" that included a monitor, a "receiver," a keyboard, and an antenna for $2,500.  On July 16, 2024, ZHAO told Co-Conspirator 1 that "it can't be lower than 2300."

c.  On or about October 8, 2024, Co-Conspirator 1 told Defendant ZHAO that the computer was worth $1,800 and that 5,000 Renminbi (Chinese currency) was already paid.

d.  On or about October 11, 2024, Co-Conspirator 1 told Defendant ZHAO that he will pay Defendant ZHAO "1000 usd" tomorrow.

e.  On or about October 13, 2024, Defendant ZHAO received $1,000.

f.  On or about October 22, 2024, Defendant ZHAO informed Co-Conspirator 1 that "the computer is screwed.  I can't open.  I'll return you money."

g.  On or about October 29, 2024, Defendant ZHAO told Co-Conspirator 1 that he will definitely send a computer "this weekend."

h.  On or about November 4, 2024, Co-Conspirator 1 asked Defendant ZHAO to take care of "the computer matter" this week.  Defendant ZHAO replied that he was too busy but will "[take care] in three days."

i.  On or about December 4, 2024, Co-Conspirator 1 asked ZHAO whether the slot at the front of the computer was for a hard drive.  ZHAO replied that "It's

for two functions.  It's for encryption slot or for hard drive. It's very rare now. Hard to find.  If you can guarantee both of our safety while making some money for both of us, sell it.  It's the end of the year."

*Classified hard drives*

j.  On or about July 16, 2024, Defendant ZHAO discussed the sale of hard drives with an individual purporting to reside in the PRC, sending the individual the following photograph:



k.  On or about July 16, 2024, Defendant ZHAO also informed Co-Conspirator 1 that "I have many computer hard drives."  Defendant ZHAO further told Co-Conspirator 1 that "It may not be possible to check the contents of the hard drives.  Tomorrow I will check how many are left.  Do you understand unclassified and secret?"

l.  On the same day, Co-Conspirator 1 replied "Understood."  Defendant ZHAO responded to Co-Conspirator 1 that "the steps used to read the hard drive contents might be burdensome."

Indictment - 7
*United States v. Jian Zhao*

m. In subsequent conversation on the same day, Defendant ZHAO told Co-Conspirator 1 that he had twenty (20) hard drives, that although he did not know their contents, they were "definitely government's … we all are clear on what they are," that "there could be intelligence or has nothing," that he did not "guarantee anything," and asked Co-Conspirator 1 that "your buyer needs intelligence, right?" Defendant ZHAO and Co-Conspirator 1 eventually agreed to the sale of all twenty (20) hard drives for $10,000, with $5,000 down payment and another $5000 upon delivery.

n. On or about August 3, 2024, Defendant ZHAO received $2,500.

o. On or about August 7, 2024, Defendant ZHAO received another $2,500.

p. On or about August 7, 2024, Defendant ZHAO gave Co-Conspirator 1 his address for logistics located in Dupont, WA.

q. On or about August 13, 2024, Defendant ZHAO told Co-Conspirator 1 that he would be home on "Friday" for a courier to pick up the two packages containing the hard drives.

r. On or about Friday, August 16, 2024, Defendant ZHAO informed Co-Conspirator 1 that the packages had been picked up.

s. On or about August 26, 2024, Defendant ZHAO told Co-Conspirator 1 that he had "ten (hard drives) with red and highest-classification orange[2] labels" that he will sell for $8,000, stating that he was not worried about selling hard drives of "this classification," but "speaking from heart," Defendant ZHAO was not "totally comfortable" selling, but would sell "if there was a buyer," but he was not in a rush.

t. On or about September 5, 2024, Co-Conspirator 1 told Defendant ZHAO that he would transfer $2,500 "today or tomorrow."

u. On or about September 9, 2024, Defendant ZHAO received $2,500.

---

[2] TOP SECRET classification labels are orange in color, and SECRET classification labels are red in color.

Indictment - 8
*United States v. Jian Zhao*

v. On or about September 12, 2024, Co-Conspirator 1 sent the following photos of non-stickered hard drives and hard drives labeled SECRET to ZHAO, indicating Co-Conspirator 1's receipt of the hard drives.





w. On or about September 15, 2024, Co-Conspirator 1 informed Defendant ZHAO that the buyer only received nineteen (19) hard drives, three of which were corrupted and as such, the buyer would only pay $2,000 of the remaining

$2,500 payment. ZHAO agreed and stated that he had never promised anything regarding the hard drives' content or condition, and that he would never sell to this buyer again.

x.  On or about October 3, 2024, Defendant ZHAO told Co-Conspirator 1 that "I have a couple more TS and S," using the common abbreviations for TOP SECRET and SECRET classifications. Defendant ZHAO stated further that "I don't know what's inside. With TS labels, those who understand would get what it means."

y.  On or about October 23, 2024, Co-Conspirator 1 told Defendant ZHAO, in sum and substance, that the "buyer" asked why a document's classification level was different, that it was not "TS as promised," and asked if Defendant ZHAO had any TS-class documents because this is what they [the buyer] cared about. Defendant ZHAO responded that TS was for the hard drive, not documents, and that he could not open TS documents. Defendant ZHAO further stated that he has "less than TS" documents, but "not now" because "S" was difficult to get, though he did have "red" hard drives.

*Sensitive U.S. military documents*

z.  On or about October 11, 2024, Defendant ZHAO informed Co-Conspirator 1 that he had "good stuff" and asked Co-Conspirator 1 to get a quote from any buyer before Defendant ZHAO named a price. Co-Conspirator 1 agreed to go find "an awesome buyer" and asked to see the "cover." Defendant ZHAO asked Co-Conspirator 1 to "spread the news. It's Brigade[3] Level." Shortly thereafter, Co-Conspirator 1 said "Ok. Done. Recall," and commented "this needs some time. This is way top [we] must be very very careful." Defendant ZHAO replied "Very sensitive document. Super difficult to get."

aa. On or about October 12, 2024, Co-Conspirator 1 informed Defendant ZHAO that he had spread the news and asked Defendant ZHAO to "give a ballpark

---

[3] A brigade is a military unit in the U.S. Army that is made up of several battalions and a few thousand soldiers.

price." Defendant ZHAO replied "If you want this I'll take whatever you feel like . . . but in these couple of years, anything that touches himars, 3-4000 is the starting price. For you, 3000."

bb. On or about October 15, 2024, Defendant ZHAO asked Co-Conspirator 1 if he had seen the cover and that Defendant ZHAO "needed to delete it" after Co-Conspirator 1 saw it. A few minutes later, Co-Conspirator 1 answered "I haven't had the chance to open the last one."

cc. On or about October 22, 2024, Co-Conspirator 1 told Defendant ZHAO that "I had someone review the cover that you sent a few days ago. They said it's worth two thousand dollars. I told them no, and they suggested that, since you have another document," at which time Defendant ZHAO interjected "I won't discuss 2000." Co-Conspirator 1 proceeded with telling Defendant ZHAO that he would suggest selling the two documents as a "package" and figuring out an "average number" to charge for each document, and asked Defendant ZHAO if he was interested in directly communicating with the "new buyer." Defendant ZHAO answered "I won't take your suggestion. I won't consider. F*** this world. I'm not selling, brother." Following a voice call, Defendant ZHAO stated to Co-Conspirator 1 "what I can get for you, you can't get anywhere else." Co-Conspirator 1 then replied that he "will ask more . . . [and] find high level people."

dd. Approximately twelve hours later, Co-Conspirator 1 asked Defendant ZHAO for "cover and table of contents." Co-Conspirator 1 also stated: "This is a capable customer" and followed with a voice call.

ee. Approximately five hours later, Defendant ZHAO stated to Co-Conspirator 1 that "the 42-page one, 2.5K is fine. One copy. Go talk to others about the price for the rest."

ff. On or about October 23, 2024, Defendant ZHAO reiterated to Co-Conspirator 1 that he had one copy of the 42-page document for sell for "2.5K," and that he needed to organize "the rest." Co-Conspirator 1 replied that "the buyer"

wanted "two documents as a package" and wanted to see the cover and table of contents for the second document. Defendant ZHAO responded that the second document was not for sale, and that they should find another buyer if the current buyer would not take only the first document. Co-Conspirator 1 replied "I can't afford to make this person angry. Don't play me boss. At the beginning you did say two documents. You said go find high level people yesterday." Defendant ZHAO eventually instructed Co-Conspirator 1 to name a high price. Later, Co-Conspirator 1 informed Defendant ZHAO that the buyer's offer would be "two documents for 6k+500 good will," with the caveat that the buyer would see the cover and table of contents first.

gg. On or about October 23, 2024, Defendant ZHAO and Co-Conspirator 1 communicated about a document relating to military exercises between the United States and another country.

hh. On or about October 24, 2024, Defendant ZHAO asked Co-Conspirator 1 if he has downloaded a particular end-to-end encrypted messaging application ("messaging application"). Co-Conspirator 1 responded that he was looking for a way as his cellphone would not let him install.

ii. On or about October 25, 2024, Co-Conspirator 1 told Defendant ZHAO that he followed up but the buyer needed another day. Defendant ZHAO responded, "do you know how risky this is ?!?" to which Co-Conspirator 1 replied "[i]f I were in your position, I would not dare," and promised that he would call the buyer at "9am tomorrow."

jj. On or about October 26, 2024, Co-Conspirator 1 told Defendant ZHAO to prepare the documents and to send the two complete documents, promising that payment would be made in three days. Co-Conspirator 1 further told Defendant ZHAO to organize the documents "page by page," compress the file, and told Defendant ZHAO the exact password to use for the file. Co-Conspirator 1 then told Defendant ZHAO that he was preparing the "transfer site" and asked Defendant ZHAO if he could receive a file from the site.

Defendant ZHAO responded that he "could download, but how do I upload?" Co-Conspirator 1 further told Defendant ZHAO that there was a "time limit" and that item would disappear after the time limit, and a voice call followed.

kk. On or about October 27, 2024, Defendant ZHAO told Co-Conspirator 1 that he was "going to do it now." Defendant ZHAO further stated that he could "only scan, scan after printing then upload to you. I can't upload using my computer. It's too dangerous." Co-Conspirator 1 replied "you decide."

ll. Approximately five minutes later, Defendant ZHAO told Co-Conspirator 1 "I have in my hand. Two documents."

mm.   Approximately 30 minutes after Defendant ZHAO claiming that he had two documents in hand, Defendant ZHAO sent a confirmation code to Co-Conspirator 1, stating "I uploaded. This is too troublesome." Co-Conspirator 1 asked for a link, and Defendant ZHAO responded "Can't find it! I copied the link. It's the code. Can't you download [messaging application]?" Defendant ZHAO added that "[Messaging application] is the safest. This is too troublesome. This feels very risky." Nevertheless, Defendant ZHAO continued with transferring documents using the transfer site prepared by Co-Conspirator 1, sending a link and confirming "this is the first half of the first document" approximately two minutes after saying "this feels very risky," and confirming transferring of all documents approximately 54 minutes after. Co-Conspirator 1 responded "great. Reliable. Full payment in three days."

nn. Defendant ZHAO went into his office located at Joint Base Lewis-McChord on or about Sunday, October 27, 2024. After approximately five minutes of activity on his computer, Defendant ZHAO left his office emptyhanded, returned with two documents, and laid the two documents on top of his desk.

oo. Defendant ZHAO used an unknown scanning application on his personal cellphone to scan the first document page by page. Defendant ZHAO then walked out of his office with the second document, and subsequently returned with the second document rolled up in his hands.

pp. The first document, titled "Strategic and Operation Rockets and Missiles"
(STORM), related to the operation of strategic weaponry and contained a
"CUI" marking, along with two additional warning banners that read:
"Distribution Statement D:  Distribution authorized to DoD Department of
Defense and U.S. DoD contractors only.  Further dissemination only as direct
by STORM, SFAE-M5L-PFF or Higher DOD Authority."  The document also
contained a warning banner that read: "Export-Control Act Warning: This
document contains technical data whose export is restricted by the Arms
Export Control Act (Title 22, U.S.C., Sec. 2751 et seq) or the Export
Administration Act of 1979, as amended (Title 50, U.S.C., App. 2401 et seq).
Violations of these export laws are subject to severe criminal penalties.
Disseminate in accordance with provisions of DoD Directive 5230.25."

qq. The second document also contained a CUI marking and described a U.S.
Army Pacific, simulation-driven, bilateral and multinational command post
exercise.  The exercise is designed to enhance U.S. and multinational partner
combat readiness and interoperability while strengthening multinational
relationships and demonstrating U.S. resolve to support the security interest of
friends and allies in the Pacific region.

rr. On or about October 29, 2024, Defendant ZHAO and Co-Conspirator 1
confirmed that they have found and added each other on [messaging
application].

ss. On or about October 29, 2024, Co-Conspirator 1 passed a message from the
buyer to Defendant ZHAO that stated, "since you've already xxx, why don't
you bring out some good stuff."  Defendant ZHAO asked Co-Conspirator 1
"buyer said that?  The problem is that everyone has certain restrictions" and
stated that "I sure will take good stuff but I need to guarantee my safety."
Defendant ZHAO further pondered why the buyer was "opinionated against"
him, and Co-Conspirator 1 comforted Defendant ZHAO and stated that while

the buyer had a lot of demands, they were safe, paid a good price, and there was no nonsense because they are "high level."

tt. On or about November 1, 2024, Co-Conspirator 1 told Defendant ZHAO to expect receiving payments for three consecutive days, arranged as "2000+2000+500."

uu. On or about November 1, 2024, Defendant ZHAO received $2,000.

vv. On or about November 2, 2024, Defendant ZHAO received $2,000.

ww.  On or about November 3, 2024, Defendant ZHAO received $500.

xx. On or about November 6, 2024, Defendant ZHAO surreptitiously took pictures of a sensitive document pertaining to a military exercise simulating a conflict with the PRC.

yy. On or about November 7, 2024, Defendant ZHAO took a video of an excel file on his government computer screen and scrolled through the document.

zz. On or about November 21, 2024, Defendant took a video of his government computer screen.

aaa.  On or about December 4, 2024, Defendant ZHAO told Co-Conspirator 1 that he had a "90-page manual" that he was willing to sell for $1,500, and that if the buyer would not buy the document, Defendant ZHAO and Co-Conspirator 1 should go find another buyer. Co-Conspirator 1 responded that he would reach out to the buyer, commenting that there were no good people "in this field" and that "no one in the establishment will give up an opportunity to take all."

bbb.  On or about December 5, 2024, Co-Conspirator 1 told Defendant ZHAO that the buyer would aim to pay in seven to ten days, and asked Defendant ZHAO if that was acceptable.

ccc.  On or about December 19, 2024, Defendant ZHAO informed Co-Conspirator 1 that he received "2K." Co-Conspirator 1 explained "1.5 + .5 Christmas gift money."

ddd.  On or about December 19, 2024, Defendant ZHAO received $2,000.

All in violation of Title 18, United States Code, Section 793(g).

## COUNT 2

### *(Bribery of Public Official)*

15.     The allegations contained in paragraphs 1 through 14 of this Indictment are re-alleged and fully incorporated here by reference.

16.     From on or about July 2024, and continuing through the present, in the Western District of Washington and elsewhere, Defendant Jian ZHAO, a public official, namely, a Battery Supply Sergeant of the United States Army responsible for, among other duties, protecting United States military classified, national defense, sensitive, CUI marked, and operational security information, directly and indirectly, corruptly received, accepted, and agreed to receive and accepting something of value, namely, United States dollars, in return for being induced to do an act and omit doing an act in violation of his official duties.  Specifically, Defendant ZHAO corruptly received and accepted payments totally approximately $15,000 USD in exchange for gathering electronic media, documents and information containing classified, national security, CUI-marked, and sensitive military information to Co-Conspirator 1.  Such conduct violated Defendant ZHAO's duties and responsibilities as a Battery Supply Sergeant, including the duty to protect United States military classified, national defense, CUI-marked, and operationally sensitive information.

All in violation of Title 18, United States Code, Section 201(b)(2)(C).

## COUNT 3

### *(Theft of Government Property)*

17.     The allegations contained in paragraphs 1 through 16 of this Indictment are re-alleged and fully incorporated here by reference.

18.     Between in or about July 2024, and continuing through the present, in the Western District of Washington and elsewhere, Defendant Jian ZHAO, did knowingly and unlawfully steal and convert to his own use or the use of another, and without authority, sold, conveyed and disposed of records and things of value of the United States, namely, electronic media and United States military classified, national defense, sensitive, CUI-

marked, and operational security information, the aggregate value of which was more than $1,000.

All in violation of Title 18, United States Code, Section 641.

## NOTICE OF CRIMINAL FORFEITURE

19.    The allegations contained in paragraphs 1 through 18 of this Indictment are re-alleged and fully incorporated here by reference.

20.    Pursuant to Title 18, United States Code, Section 793(h), the United States gives notice to the Defendant that upon his conviction of the offense charged in Count 1 of this Indictment, the United States will seek forfeiture of all property constituting or derived from, any proceeds obtained, directly or indirectly, from any foreign government, or any faction or party or military or naval force within a foreign country, whether recognized or unrecognized by the United States.

21.    Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the United States gives notice to the Defendant that upon his conviction of the offense charged in Count 2 and Count 3 of this Indictment, the United States will seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offense.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Indictment - 17
*United States v. Jian Zhao*

## Money Judgment and Substitute Assets

22.    The United States gives notice that it will seek a money judgment against the Defendant.  In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exist, the United States will seek to forfeit any other property of the defendant up to the amount of the money judgment.

A TRUE BILL: yes

DATED: 5 MARCH 2025

*Signature of Foreperson redacted pursuant to the policy of the Judicial Conference of the United States.*

_____

FOREPERSON

TEAL LUTHY MILLER
Acting United States Attorney

GEOFFREY A. BARROW
KATHERINE A. RYKKEN
Special Assistant United States Attorneys

CHRISTOPHER M. COOK
YIFEI ZHENG
Trial Attorneys
U.S. Department of Justice
National Security Division