UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | NO. CR 25-5040-BHS |
|---|---|
| Plaintiff | |
| v. | **GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION** |
| JIAN ZHAO, | |
| Defendant. | |

A grand jury returned an indictment on March 5, 2025, charging JIAN ZHAO with the following offenses:

Count 1: *Conspiracy to Gather, Transmit or Lose National Defense Information in violation of 18 U.S.C. § 793(g).*

Count 2: *Bribery of Public Official in violation of 18 U.S.C. § 201(b)(2)(C).*

Count 3: *Theft of Government Property in violation of 18 U.S.C. § 641.*

The government requests a detention hearing occur concurrent with Mr. Zhao's initial appearance on Mach 6, 2025. The government files this memorandum in support of detention. ZHAO is charged with multiple offenses that pose a danger to the national

Memorandum in Support of Detention - 1
*United States v. Zhao* / CR 25-5040-BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

security of the United States. In addition, based on the facts set forth below, ZHAO is both a danger to the community and a potential flight risk.

## FACTUAL SUMMARY OF EVENTS RELATED TO ZHAO

Overview

ZHAO, who is an active-duty member of the U.S. Army and stationed at Joint Base Lewis McCord ("JBLM"), has repeatedly sold sensitive military and national defense information, including an encrypted hard drive and 20 classified hard drives to co-conspirators operating on behalf of the People's Republic of China ("PRC"). For the sale of classified hard drives and stolen government property, ZHAO received at least $15,000.

ZHAO swore an oath to faithfully discharge his duties as a member of the U.S. Army. As an active-duty soldier, ZHAO had a duty to protect national defense information and other sensitive military information. ZHAO received multiple trainings about his duties, including how to handle classified and other sensitive information and how to spot recruitment efforts by U.S. adversaries.

ZHAO Sold an Encryption-Capable Computer

ZHAO actively engaged with Co-Conspirator 1 from July to December 2024 to sell an encrypted military computer, for which ZHAO was paid $1,000. On July 13, 2024, ZHAO offered Co-Conspirator 1 a computer used in "military office equipment system" for $1,800. A few days later, ZHAO again offered a computer system that was "just replaced" that included a monitor, a "receiver," a keyboard, and an antenna for $2,500 and that price could not be "lower than 2300." In October 2024, Co-Conspirator 1 offered ZHAO $1,000. ZHAO received $1,000 two days later. Images of the computer are below:

/ / /

/ / /

/ / /

Memorandum in Support of Detention - 2
*United States v. Zhao* / CR 25-5040-BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

  

In December 2024, Co-Conspirator 1 confirmed he had received the computer and asked about how the computer worked, specifically a slot at the front of the computer. ZHAO said "It's for two functions. It's for encryption slot or for hard drive. It's very rare now. Hard to find. If you can guarantee both of our safety while making some money for both of us, sell it. It's the end of the year."

The Sale of Classified Hard Drives

ZHAO also began negotiations with two buyers in the PRC, including Co-Conspirator 1, to sell classified hard drives in July 2024. ZHAO sent the following photo to a potential buyer:



Memorandum in Support of Detention - 3
*United States v. Zhao* / CR 25-5040-BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The stickers on these hard drives indicate different levels of classification. Where visible, green stickers indicate unclassified material, red stickers indicate secret-level information, and yellow or orange stickers indicate top secret-level information. ZHAO told Co-Conspirator 1 that "I have many computer hard drives" and that "It may not be possible to check the contents of the hard drives. Tomorrow I will check how many are left. Do you understand unclassified and secret?"

ZHAO told Co-Conspirator 1 that he had 20 hard drives for sale and that although he did not know their contents, the hard drives were "definitely government's … we all are clear on what they are," that "there could be intelligence or has nothing," that he did not "guarantee anything." ZHAO also understood that the buyer needed intelligence information, asking Co-Conspirator 1 "your buyer needs intelligence, right?" Before selling the hard drives, ZHAO explained to Co-Conspirator 1 that he had "ten (hard drives) with red and highest-classification orange labels" that he will sell for $8,000, stating that he was not worried about selling hard drives of "this classification." ZHAO agreed to a sale price of $10,000, $5,000 up front in August 2024 and $5,000 after delivery of the hard drives in September 2024. ZHAO was paid at least $7,500 of the $10,000 agreed-upon price. Co-Conspirator 1 confirmed receipt of the hard drives by sending the following photos to ZHAO.




Memorandum in Support of Detention - 4
*United States v. Zhao* / CR 25-5040-BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In October 2024, ZHAO again offered Co-Conspirator 1 additional classified hard drives.

ZHAO Sold Sensitive Military Documents

Also in October 2024, ZHAO sold sensitive military documents, he also came onto the JBLM property on a weekend to photograph and send the documents. ZHAO told Co-conspirator 1 that he had "good stuff" and asked Co-Conspirator 1 to get a quote from any buyer. Co-conspirator 1 agreed to find an "awesome buyer." ZHAO asked Co-conspirator 1 to "spread the news. It's Brigade Level." Co-Conspirator 1 responded "Ok. Done. Recall. this needs some time. This is way top [we] must be very very careful." ZHAO replied "Very sensitive document. Super difficult to get" and also that "If you want this I'll take whatever you feel like … but in these couple of years, anything that touches himars , 3-4000 is the starting price. For you, 3000." HIMARS is a reference to the High Mobility Rocket System, a long-range artillery system that the U.S. Army uses to simultaneously launch multiple, precisions-guided rockets.

Over the course of several days, ZHAO and Co-Conspirator 1 haggled over the price of the document, whether one or two documents would be sent, how to send the documents, and agreed to a sale price of $6,500 for two documents. Co-Conspirator 1 told ZHAO that he couldn't afford to make the buyer angry. Messages between ZHAO and Co-Conspirator 1 and surveillance video of ZHAO on October 27, 2024, show ZHAO photographing power point presentations from his desk at JBLM and communicating with Co-Conspirator 1 at the same time. Stills from the surveillance video show ZHAO taking photos:

/ / /

/ / /

/ / /

/ / /

/ / /

Memorandum in Support of Detention - 5  
United States v. Zhao / CR 25-5040-BHS

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970



ZHAO transferred the files to Co-Conspirator 1. The two documents were: (1) a "Strategic and Operation Rockets and Missiles" presentation, related to the operation of strategic weaponry, which contained export controls and a "CUI" marking[1], and (2) a presentation about a Pacific, simulation-driven, bilateral and multinational command post exercise, which also contained a CUI marking. In early November 2024, ZHAO received payments totaling $4,500.

Again in November 2024, ZHAO took photos of a sensitive document about a military exercise simulating conflict with the PRC and took videos of his government computer screen. In early December 2024, ZHAO offered Co-Conspirator 1 a "90-page manual," for which Co-Conspirator 1 agreed to pay a total of $2,000. ZHAO received $2,000 on December 19, 2024.

ZHAO's Arrest

ZHAO was arrested pursuant to federal warrant and his home searched on March 6, 2025.

---

[1] CUI is a reference to controlled unclassified information which a distinct category of government information that, while not classified, is nevertheless subject to safeguarding procedures and dissemination controls.

Memorandum in Support of Detention - 6
United States v. Zhao / CR 25-5040-BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# ZHAO SHOULD BE DETAINED

The Bail Reform Act

Under the Bail Reform Act, Title 18, United States Code, Section 3141 *et seq.*, federal courts are required to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. *See* 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of dangerousness must be supported by clear and convincing evidence. *See United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990). A finding of risk of nonappearance must be supported by a preponderance of the evidence, *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986), meaning the Government "must demonstrate that it is more likely than not that there is a serious *risk* that the defendant will flee, not that it is more likely than not that the defendant *will* flee." *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1138-39 (D. Idaho 2023) (emphasis in original.)

The Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). As discussed below, these factors weigh heavily against pretrial release.

Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means. *See* 18 U.S.C. § 3142(f)(2); *Reem v. Hennessy*, 2018 WL 1258137, at *2 (N.D. Cal. Mar. 12, 2018); *see also United States v. LaFontaine*, 210 F.3d 125, 130-31 (2d Cir. 2000) (holding that the government is entitled to proceed by proffer in detention hearings). In the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffer.

Memorandum in Support of Detention - 7
*United States v. Zhao* / CR 25-5040-BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Id.* at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." *Id.* (internal quotation marks omitted).

Statutory Factors

Each of the relevant statutory factors in the detention analysis underscore that ZHAO presents both an ongoing danger to the community and a serious risk of flight if released on bond.

*Nature and Circumstances of the Charged Offense*

The first factor—the nature and circumstances of the offense charged—contemplates consideration of not only the specific acts and charges alleged in the indictment, but also the potential penalty that may be imposed if the person is convicted. *See, e.g.*, *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008); *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) (noting defendants faced respectively penalties of 35 and 70 years if convicted). Here, the nature and circumstances of the offenses are serious, and the penalties are appropriately severe

The nature of this offense is discussed in more detail below, but ZHAO faces a significant sentence in this case. With respect to the severity of the sentence ZHAO faces, the highest applicable Sentencing Guideline relates to 18 U.S.C. 793(g). That Guideline level is 34, prior to any departures upward or downward, resulting in potential prison sentence of 151 to 180 months.[2] *See Townsend*, 897 F.2d at 995; *see also United States v. Cisneros*, 328 F.3d 610, 618 (10th Cir. 2003) (holding defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond). This fact, combined with the fact that Defendant is actively engaged in selling intelligence to buyers in China, dramatically heightens the risk of flight.

---

[2] Note that the high-end of the applicable Guideline is 188 months but the statutory maximum is 15 years or 180 months.

Memorandum in Support of Detention - 8
*United States v. Zhao* / CR 25-5040-BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Pursuant to Executive Order 13526, information that is classified as TOP SECRET that is disclosed without authorization can be expected to cause *exceptionally grave damage* to the national security. The unauthorized disclosure of SECRET information can be expected to cause *serious damage* to the national security. ZHAO's communications indicate he has already sold both TOP SECRET and SECRET hard drives to buyers in China. This is an intolerable breach, and a betrayal of ZHAO's duty as a U.S. Army soldier to defend this country and protect classified information.

*The Weight of the Evidence*

The second factor is the weight of the evidence. Although section 3142(g)(2) specifically enumerates weight of the evidence as a consideration in determining release, the Ninth Circuit has held that it is to be afforded less weight than the other statutory factors. *See Townsend*, 897 F.2d at 994; *Winsor*, 785 F.2d at 757. The weight of the evidence is, however, an important and relevant consideration in the Court's evaluation of whether a defendant "will fail to appear or will pose a danger to any person or to the community. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).

Here, the weight of the evidence against the Defendant is strong. Each offense with which ZHAO is charged is well-documented, from the sale of classified hard drives to surveillance video showing ZHAO photographing sensitive military information. Financial records should ZHAO receiving payments consistent with his agreement with Co-Conspirator 1 through an intermediary bank account.

ZHAO's communications clearly indicate he eagerly engaged with buyers in China for the sale of sensitive information, including the classified hard drives, and that he agreed to obtain and transmit that information. ZHAO communications also make clear he was fully aware of the seriousness of his conduct, informing his buyers that "he was not totally comfortable" selling certain information, but that he would do so "if there was a buyer." ZHAO also understood that his buyers needed "intelligence" and cared about the classification levels of information he was selling. ZHAO negotiated for higher

Memorandum in Support of Detention - 9
*United States v. Zhao* / CR 25-5040-BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

prices for more sensitive documents. ZHAO is literally on camera photographing sensitive information and sending messages on his phone after taking those pictures.

Accordingly, where, as here, the evidence of Defendant's guilt is strong, it provides "a considerable incentive to flee." *United States v. Millan*, 4 F.3d 1038, 1046 (2d Cir. 1993); *see also Motamedi*, 767 F.2d at 1408 (9th Cir. 1985); *United States v. Palmer-Contreras*, 835 F.2d 15, 18 (1st Cir. 1987) (where "the evidence against defendants is strong, the incentive for relocation is increased").

*Defendant's History and Characteristics*

Consideration of the history and characteristics of the person under section 3142(g)(3) includes the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law. *See* § 3142(g)(3)(A) and (B).

Critically, Defendant has ties to the PRC and has repeatedly said he wants to move back to the PRC. For example in April of 2024, ZHAO told a person in the PRC to whom he offered intelligence for sale: "Damn it" "I really want to go back to China[.]" Again in October 2024, in a conversation with the same person, ZHAO reiterated his desire, saying "I really want to go back to China[.]" Following ZHAO's arrest, he is unlikely to be employed by the U.S. Army and will no longer have employment ties or financial resources tying him to this community. In addition, the government believes ZHAO has family members in China. Each of these facts creates a significant risk of Defendant's non-appearance if he is released.

/ / /

/ / /

Memorandum in Support of Detention - 10
*United States v. Zhao* / CR 25-5040-BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Nature and Seriousness of the Danger to the Community*

In evaluating the nature and seriousness of the danger a defendant poses to the community, the Court may consider, *inter alia*, the defendant's criminal history; whether the crimes charged required intelligence, planning, capital, facility in deception, international communications, or international motives; and whether the charged crimes carry severe penalties.[3] *See Townsend*, 897 F.2d at 996.

Here, ZHAO is charged with significant and serious crimes that impact the national security of the United States. ZHAO is a clearance holder with access to classified information, much of which is retained in his mind, and cannot be adequately protected against. The communication of the sensitive information in this case occurred using everyday methods –mail and a phone. Allowing ZHAO easy access to either of these, as he would invariably have if released, presents an ongoing danger to the community. Based on surveillance video and other evidence, the government is aware that ZHAO has taken other sensitive information but does not yet know where that information is or to whom it was sent. As described above, however, there is clear evidence that for most of the information, ZHAO has been communicating with co-conspirators in China for the passage of that information, and has been receiving payments for that passage. He has also used encrypted applications to communicate with his co-conspirators, and also used couriers. The government is still learning the full extent of ZHAO's surreptitious communications.

More importantly, evidence in the case indicates that ZHAO maintains a warehouse, the location of which the investigation has not yet been able to determine. Absent round-the-clock surveillance by law enforcement, allowing ZHAO potential access to that warehouse, or any information he has secreted away, undermines any sense

---

[3] Other factors listed in *Townsend*, such as the defendant's prior performance on court-imposed supervision; whether the defendant illegally possessed firearms or large quantities of prohibited drugs; and, whether the defendant was on probation, parole, supervised release, or subject to conditions of pretrial release, are inapplicable here. 897 F.2d at 996.

Memorandum in Support of Detention - 11
*United States v. Zhao* / CR 25-5040-BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of safety the community may have if ZHAO was released. Other than detention, containing the information in ZHAO's mind and his access to any additional information he may have hidden is impossible, especially when ZHAO has already shown his eagerness to part with sensitive information for money.

**REQUEST FOR STAY OF RELEASE**

If the Court finds that release is appropriate, the government requests that the Court stay the release order so that the government can appeal that decision to the district judge. *See* Fed. R. Crim. Proc. 47 (which governs criminal motion practice generally). Here, a stay would be needed to enable this district judge to meaningfully review the any release order before it took effect. Without a stay, ZHAO would be released following his initial appearance. This Court has inherent power to control its docket "in a manner which will promote economy of time and effort for itself, counsel, and for litigants." *CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962). Entry of a stay is one of those inherent powers. *Id.*

**CONCLUSION**

ZHAO's conduct is particularly reprehensible – selling information vital to the national security for thousands of dollars – and demonstrates that ZHAO presents an ongoing danger to the community and a risk of flight. ZHAO should be detained.

DATED this 6th day of March, 2025

Respectfully submitted,

TEAL LUTHY MILLER
Acting United States Attorney

*/s/ Geoffrey A. Barrow*
GEOFFREY BARROW, D.C. #462662
KATHERINE A. RYKKEN, CSB #267196
Special Assistant United States Attorneys

Memorandum in Support of Detention - 12
United States v. Zhao / CR 25-5040-BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970